# In The United States Court Of Appeals
# For The Eleventh Circuit

———————————————

### CENTER FOR A SUSTAINABLE COAST and
### KAREN GRAINEY,

*Plaintiffs - Appellants,*

v.

### U.S. ARMY CORPS OF ENGINEERS,
### DISTRICT COMMANDER AND DISTRICT ENGINEER,
### U.S. Army Corps of Engineers,
### Savannah District,

*Defendants - Appellants.*

———————————————

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN
DISTRICT OF GEORGIA, 2:19-CV-00058 (HON. LISA GODBEY WOOD)

———————

### PLAINTIFFS-APPELLANTS' OPENING BRIEF
———————

Jon L. Schwartz
LAW OFFICE OF JON L. SCHWARTZ
1100 Peachtree ST NE
Suite 250
Atlanta, GA 30309
404-667-3047

*Counsel for Plaintiffs-Appellants*

Court of Appeals Docket No. 22-11079-E

*Center for a Sustainable Coast, et al v. U.S. Army Corps of Engineers, et al*

## CERTIFICATE OF INTERESTED PERSONS

Center For a Sustainable Coast

Cheesbro, Hon. Benjamin W.

Davids, Justin G.

Estes, David H.

Geary, Colonel Joseph R.

Grainey, Karen

Gray, Michael T.

Hibner, Colonel Daniel H.

Ingram, Gary

Jackson, IV, Robert B.

Leonard, Jaqueline Margaret

Lumar LLC

National Park Service, U.S. Department of the Interior

Schwartz, Jonathan Lee

Schwedler, Patrick James

Stoner, Amanda

U.S. Army Corps of Engineers, Savannah District

Wood, Hon. Lisa Godbey

No publicly traded company or corporation has an

interest in the outcome of this case or appeal.

June 22, 2022.


/s/ Jon L. Schwartz

Jon L. Schwartz
Ga. Bar. No. 631038
*Attorney for Plaintiffs Center for a Sustainable Coast and Karen Grainey*
**Law Office of Jon L. Schwartz**
1100 Peachtree St., N.E., Suite 250, Atlanta, GA 30309
(404) 667-3047

## STATEMENT REGARDING ORAL ARGUMENT

Appellants Center for a Sustainable Coast and Karen Grainey (collectively "the Center") do not request oral argument. The facts and legal arguments can be adequately presented in the briefs and record, and the Center does not anticipate that the Court's decisional process would be significantly aided by oral argument.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS & DISCLOSURE STATEMENT ................................................... i

STATEMENT REGARDING ORAL ARGUMENT .............. iii

TABLE OF CONTENTS ........................................... iv

TABLE OF AUTHORITIES .................................... vi

JURISDICTIONAL STATEMENT ........................... xi

STATEMENT OF THE ISSUES ............................... 1

STATEMENT OF THE CASE .................................. 2

    Nature of the Case ........................................... 2

    Course of Proceedings ...................................... 3

    Statement of the Facts ..................................... 4

    Standard of Review ......................................... 5

SUMMARY OF THE ARGUMENT ......................... 8

ARGUMENT AND CITATIONS OF AUTHORITY ............ 10

    I.    A favorable decision will redress the Center's harm ..................................................... 10

        A.    The Corps authorized the dock without complying with NEPA ............................. 10

        B.    The standard for redressability is relaxed when an agency violates procedural rights ... 12

C.    The Center's claim is not moot because the district court can set aside the permit authorizing the dock's existence ............... 16

D.    The Corps' enforcement discretion doesn't affect whether the Center's harm is redressable ................................................. 19

E.    Setting aside the permit would take away the non-party permit holder's legitimate discretion to use and maintain the dock .... 23

II.    The district court applied the wrong legal standard for admitting extra-record material ....... 27

A.    The Corps failed to consider the tract's land use classification ........................................ 27

B.    The district court erred in finding that extra-record material is admissible "only" where there is a strong showing of bad faith or improper behavior by the agency ................................................. 28

C.    Whether an agency considered all relevant factors can sometimes be determined only by reviewing extra-record material .......................................... 32

D.    The Eleventh Circuit identified four circumstances when it may be proper to review extra-record material, but didn't find these to be the exclusive circumstances when courts can consider material outside the record ........................ 34

CONCLUSION ......................................................................... 40

CERTIFICATE OF COMPLIANCE ....................................... 42

CERTIFICATE OF SERVICE ................................................ 43

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alabama Tombigbee Rivers Coalition v. Kempthorne*,
477 F.3d 1250 (11th Cir. 2007) ................ 28, 29, 30, 32

*Animal Defense Council v. Hodel*,
840 F.2d 1432 (9th Cir.1988) ...................... 35

*ASARCO Inc. v. Kadish*,
490 U.S. 605 (1989) ...................................... 24

*Asarco, Inc. v. U.S. Envtl. Prot. Agency*,
616 F.2d 1153 (9th Cir. 1980) .................... 37

*Bennett v. Spear*,
520 U.S. 154 (1997) ............................... 25, 26

*Burlison v. McDonald's Corp.*,
455 F.3d 1242 (11th Cir. 2006) .................... 6

*Cahaba Riverkeeper v. U.S. Env't Prot. Agency*,
938 F.3d 1157 (11th Cir. 2019) ........... 9, 16, 21

*Califano v. Sanders*,
430 U.S. 99 (1977) ........................................ 7

*Church of Scientology of California v. United States*,
506 U.S. 9 (1992) ........................................ 17

*Citizens to Pres. Overton Park, Inc. v. Volpe*,
401 U.S. 402 (1971) .................... 7, 29, 31, 32

*Columbia Basin Land Prot. Ass'n v. Schlesinger*,
643 F.2d 585 (9th Cir. 1981) ...................... 19

*County of Los Angeles v. Davis*,
440 U.S. 625 (1979) .................................... 17

*Culverhouse v. Paulson & Co. Inc.*,
    813 F.3d 991 (11th Cir. 2016) ........................................ 6

*Curves, LLC v. Spalding Cty., Ga.*,
    685 F.3d 1284 (11th Cir. 2012) ................................. 6, 7

*Erie v. Pap's A.M.*,
    529 U.S. 277 (2000) ..................................................... 17

*Fed. Election Comm'n v. Akins*,
    524 U.S. 11 (1998) .......................................... 21, 22, 23

*Fla. Power & Light Co. v. Lorion*,
    470 U.S. 729 (1985) ................................................. 8, 31

*Heckler v. Chaney*,
    470 U.S. 821 (1985) ..................................................... 20

*High Point, LLLP v. Nat'l Park Serv.*,
    850 F.3d 1185 (11th Cir. 2017) ...................................... 4

*Hill v. Boy*,
    144 F.3d 1446 (11th Cir. 1998) ...................................... 4

*Inland Empire Pub. L. Conc. v. U.S. For. Ser*,
    88 F.3d 754 (9th Cir. 1996) .......................................... 38

*Knox v. Serv. Emps. Int'l Union, Loc. 1000*,
    567 U.S. 298 (2012) ..................................................... 17

*Lloyd Noland Hosp. & Clinic v. Heckler*,
    762 F.2d 1561 (11th Cir. 1985) .................................... 39

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ...................................... 9, 12, 15, 24

*Massachusetts v. EPA*,
    549 U.S. 497 (2007) .......................................... 9, 16, 20

*Michigan v. Long,*
　　463 U.S. 1032 (1983) ..................................................... 17

*Mingkid v. U.S. Atty. Gen.,*
　　468 F.3d 763 (11th Cir. 2006) ...................................... 18

*Motor Vehicles Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,*
　　463 U.S. 29 (1983) ............................................. 8, 31, 39

*Mulhall v. UNITE HERE Loc. 355,*
　　618 F.3d 1279 (11th Cir. 2010) ..................................... 6

*Ouachita Watch League v. Jacobs,*
　　463 F.3d 1163 (11th Cir. 2006) ......................... 13, 15, 21

*Pres. Endangered Areas of Cobb's History, Inc.*
*(P.E.A.C.H.) v. U.S. Army Corps of Engineers,*
　　915 F. Supp. 378 (N.D. Ga. 1995) ................................ 36

*Preserve Endangered Areas of Cobb's History, Inc. v.*
*U.S. Army Corps of Engineers,*
　　87 F.3d 1242 (11th Cir. 1996) .............................. *passim*

*Shuford v. Fid. Nat'l Prop. & Cas. Ins. Co.,*
　　508 F.3d 1337 (11th Cir. 2007) ..................................... 7

*Sierra Club, Inc. v. Leavitt,*
　　488 F.3d 904 (11th Cir. 2007) .............................. *passim*

*Sierra Club v. Martin,*
　　168 F.3d 1 (11th Cir. 1999) ................................. 7, 8, 31

*Sierra Club v. Penfold,*
　　857 F.2d 1307 (9th Cir. 1988) ...................................... 18

*Simmons v. Block,*
　　782 F.2d 1545 (11th Cir.1986) ...................................... 7

*Speech First, Inc. v. Cartwright,*
　　32 F.4th 1110 (11th Cir. 2022)...................................... 12

*Suffolk County v. Sec'y of Interior,*
    562 F.2d 1368 (2d Cir. 1977) ........................................33

*Warth v. Seldin,*
    422 U.S. 490 (1975) ...................................................6, 12

*West v. Sec'y of Dep't of Transp.,*
    206 F.3d 920 (9th Cir. 2000) ...................................18, 19

## Statutes

5 U.S.C. § 701(a)(2) ........................................................20

5 U.S.C. § 702 ................................................................xi

5 U.S.C. § 706(2)(A) ........................................................21

16 U.S.C. § 459i-5(b).............................................ix, 4, 28

42 U.S.C. § 4321 ..............................................................ix

Administrative Procedure Act (APA) ...................3, 7, 20, 21

Cumberland Island National
    Seashore Enabling Act.........................................3, 4, 28

Federal Election Campaign Act.............................................22

National Environmental Policy Act (NEPA)................*passim*

## Constitutional Provisions

U.S. Const. art. III...................................................12

## Regulations

33 C.F.R. Pt. 325, App. B (6)(a) ............................................11

33 C.F.R. § 320.4(e) ...................................................27, 39

33 C.F.R. § 325, App. B (7)................................................5, 11

33 C.F.R. § 325.2(e)(1) ....................................................... 11

33 C.F.R. § 325.6(b) ................................................... 5, 8, 17

33 C.F.R. § 326.3 ............................................................... 24

33 C.F.R. § 326.5 ............................................................... 24

40 C.F.R. § 1500.1(b) ........................................................ 12

40 C.F.R. § 1500.2(d) .................................................... 5, 12

40 C.F.R. § 1501.4(b) .................................................... 5, 12

40 C.F.R. § 1506.6(b) .................................................... 5, 12

40 C.F.R. § 1506.6(d) (2016) ........................................ 5, 12

**Other Authorities**

National Park Service's *Cumberland Island
        National Seashore Land Protection Plan* ................... 27

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under 28 U.S.C. § 1331, with federal questions arising under the Cumberland Island National Seashore Enabling Act[1] and the National Environmental Policy Act.[2]

Appellants Center for a Sustainable Coast and Karen Grainey sought judicial review of federal agency action under the Administrative Procedure Act.[3]

This is an appeal from a final judgment of the United States District Court for the Southern District of Georgia under 28 U.S.C. § 1291. The district court issued an order granting the U.S. Army Corps of Engineers' motion for summary judgment. The order was filed and entered January 21, 2022.[4] The district court entered a judgment dismissing the action on January 27, 2022.[5] This judgment

---

[1] 16 U.S.C. § 459i-5(b).

[2] 42 U.S.C. § 4321 et seq.

[3] 5 U.S.C. § 702.

[4] Doc. No. 96.

[5] Doc. No. 97.

disposed of all parties' claims and Appellants filed a timely

notice of appeal on March 28, 2022.[6]

---

[6] Doc. No. 98.

## STATEMENT OF THE ISSUES

1.    The Center sued to set aside a U.S. Army Corps of
Engineers permit authorizing the construction and existence
of a private dock within Cumberland Island National
Seashore. The permit's authorization for the presence of the
dock is for an indefinite duration with no expiration date.
But the district court held that setting aside the permit
cannot redress the Center's injury because the dock was
completed, and according to the court, it cannot "simply
assume" the permit holder will honor the court's rationale,
so "authorized or not, the dock will still be there." In general,
plaintiffs cannot establish standing if a favorable decision
would leave an independent actor with "legitimate
discretion" to continue the allegedly harmful conduct. Did
the district court err by dismissing the Center's suit when a
favorable decision would leave the non-party permit holder
with no legal right to keep the dock?

1

2.    Judicial review of agency action is generally based on an administrative record, which comprises the material considered by the decisionmaker in reaching a decision. Certain circumstances justify admitting extra-record material, but courts cannot compel agency decisionmakers to give testimony explaining their actions without a strong showing of bad faith or improper behavior by the agency. The Center moved to admit an extra-record document but didn't allege bad faith or seek to compel testimony. Did the district court err by finding that bad faith and improper behavior are the "only" circumstances to justify the admission of extra-record material?

## STATEMENT OF THE CASE

### *Nature of the Case*

The U.S. Army Corps of Engineers ("Corps") issued a permit authorizing the construction and existence of a private dock within Cumberland Island National Seashore. Appellants Center for a Sustainable Coast and Karen Grainey (collectively "the Center") sought judicial review and

alleged the permit was issued in violation of the Cumberland Island National Seashore Enabling Act ("Seashore Act") and the National Environmental Policy Act ("NEPA").

### Course of Proceedings

The Center sued the Corps and National Park Service under the Administrative Procedure Act ("APA").[7] The district court dismissed the claim against the National Park Service,[8] and that dismissal is not at issue in this appeal.

The Center moved to admit extra-record material that the Corps overlooked when reviewing the dock application, and the district court denied that motion.[9]

The parties filed cross-motions for summary judgment.[10] The district court granted the Corps' motion, finding that the Center's suit was "moot because a favorable decision won't redress plaintiff's injuries."[11] The court entered

---

[7] Doc. No. 1, 36, and 48.

[8] Doc. No. 33.

[9] Doc. No. 54, 65.

[10] Doc. No. 68, 71, 77, 78, 82, 83, 88, 94, 95.

[11] Doc. No. 96.

final judgment dismissing the action and disposing of all claims.[12] The Center filed a timely notice of appeal to this Court.[13]

### Statement of the Facts

Congress directed that Cumberland Island National Seashore "shall be permanently preserved in its primitive state" except for certain areas used for public recreation.[14] Twenty-five years later, Lumar LLC ("Lumar") purchased an undeveloped 90-acre tract within the national seashore and requested authorization from the Corps to build a private dock for residential development.[15]

NEPA requires federal agencies to take a "hard look" at the environmental impact of proposed actions, including issuing permits.[16] NEPA also requires public notice and an

---

[12] Doc. No. 97.

[13] Doc. No. 98.

[14] 16 U.S.C. § 459i-5(b); *High Point, LLLP v. Nat'l Park Serv.*, 850 F.3d 1185, 1189 (11th Cir. 2017).

[15] Administrative Record ("AR") AR00150-153, AR00165; AR00169; AR00189; AR00230; AR00246-00251;

[16] *Hill v. Boy,* 144 F.3d 1446, 1449 (11th Cir. 1998).

opportunity for comment.[17] But the Corps authorized the dock without considering how it may affect the national seashore's primitive character – and without public notice – by claiming a NEPA exemption for actions deemed unlikely to face public opposition.[18]

The permit authorized construction of the dock within three years.[19] The permit also authorizes "the presence of" the dock on Cumberland Island for "an indefinite duration with no expiration date."[20]

Center for a Sustainable Coast and its members have been harmed by the Corps' approval of the dock without notice and by the dock's presence within Cumberland Island National Seashore.

---

[17] 40 C.F.R. §§ 1500.2(d), 1501.4(b), 1506.6(b), 1506.6(d) (2016); 33 C.F.R. § Pt. 325, App. B (7).

[18] AR00036; AR00048.

[19] AR00001.

[20] Doc. No. 94 at 3 n. 3 *citing* 33 C.F.R. § 325.6(b).

### *Standard of Review*

This Court undertakes a de novo review of the district court's legal conclusions.[21] Whether the Center has standing to challenge agency action is a legal issue subject to *de novo* review.[22] Standing "in no way depends on the merits of the plaintiff's contention that particular conduct is illegal."[23] Instead, the court must "assume that on the merits the plaintiffs would be successful in their claims."[24]

Whether the district court applied the wrong standard when ruling on the Center's motion to supplement the administrative record is a legal issue subject to *de*

---

[21] *Burlison v. McDonald's Corp.*, 455 F.3d 1242, 1245 (11th Cir. 2006); *Curves, LLC v. Spalding Cty., Ga.*, 685 F.3d 1284, 1288 (11th Cir. 2012).

[22] *Mulhall v. UNITE HERE Loc. 355*, 618 F.3d 1279, 1286 (11th Cir. 2010).

[23] *Id. citing Warth v. Seldin*, 422 U.S. 490, 500 (1975).

[24] *Culverhouse v. Paulson & Co. Inc.*, 813 F.3d 991, 994 (11th Cir. 2016) (citations omitted).

*novo* review. Under the *de novo* standard of review, the district court is given no deference.[25]

This Court reviews the district court's grant of summary judgment *de novo*, "apply[ing] the same legal standards that bound the district court."[26]

The scope of review under the APA is generally narrow, and a court should not substitute its own judgment for that of the agency, but this does not shield the decision from a "thorough, probing, in-depth review."[27]

Courts "must overturn" agency action if the agency failed to "scrupulously follow" its own regulations and procedures.[28] Courts must also reverse agency action as arbitrary and capricious if the agency failed "to examine the

---

[25] *Curves, LLC v. Spalding Cnty., Ga.,* 685 F.3d 1284, 1288 (11th Cir. 2012).

[26] *Shuford v. Fid. Nat'l Prop. & Cas. Ins. Co.*, 508 F.3d 1337, 1341 (11th Cir. 2007).

[27] *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977).

[28] *Sierra Club v. Martin*, 168 F.3d 1, 4 (11th Cir. 1999) *citing Simmons v. Block*, 782 F.2d 1545, 1550 (11th Cir.1986).

relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'"[29] Before making its decision, the agency needs to consider "all relevant factors."[30]

## SUMMARY OF THE ARGUMENT

The Corps issued a permit authorizing the construction and existence of a private dock within Cumberland Island National Seashore. The Corps approved the dock without complying with NEPA's procedural requirements.

The dock was completed and the time limit for construction expired, but the permit's authorization for "the presence of" the dock is for "an indefinite duration with no expiration date."[31] Even though the permit authorizing the dock's existence is still valid, the district court concluded the Center's claims are moot and not redressable.

---

[29] *Sierra Club v. Martin*, 168 F.3d at 5 *citing Motor Vehicles Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

[30] *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985).

[31] Doc. No. 94 at 3 n. 3 *citing* 33 C.F.R. § 325.6(b).

When procedural rights have been violated, the standards for causation and redressability are relaxed. Someone whose concrete interests have been harmed by a NEPA violation has standing to sue even though they "cannot establish with any certainty" that further review will change the outcome.[32] It is sufficient "if there is some possibility that the requested relief will prompt the injury-causing party to reconsider the decision that allegedly harmed the litigant." [33]

Setting aside the permit – or remanding back to the Corps for further review even without setting aside the permit – would redress the Center's harm.

The district court also applied the wrong legal standard when denying the Center's motion to supplement the administrative record. The court used a standard that applies when parties seek to compel agency

---

[32] *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 572 n. 7 (1992).

[33] *Cahaba Riverkeeper v. U.S. Env't Prot. Agency*, 938 F.3d 1157, 1162 (11th Cir. 2019) *quoting Massachusetts v. EPA*, 549 U.S. 497, 518 (2007).

decisionmakers to provide testimony explaining their
action.

In contrast to such a request, the Center moved to
admit extra-record material that was necessary to determine
whether the Corps considered all relevant factors in making
its decision. This exception to the record review rule is
especially important in NEPA cases because an agency's
failure to consider environmental impacts may not be
apparent on the face of its decision.

## ARGUMENT AND CITATIONS OF AUTHORITY

## I.    A favorable decision will redress the Center's harm

### A.    The Corps authorized the dock without complying with NEPA

NEPA requires federal agencies to take a "hard look" at
the environmental impact of proposed actions. This is
satisfied by drafting an Environmental Assessment ("EA") or
Environmental Impact Statement ("EIS") — unless the
proposal is in a category of actions for which neither an EA
nor EIS is required. These are called "categorical exclusions."

The Corps approved the dock in this case by issuing a "letter of permission," which is a type of permit on the Corps' list of categorical exclusions.[34]

The Corps categorically excluded the dock by claiming a NEPA exemption for actions deemed unlikely to face any public opposition.[35] The Center disputes that the dock qualified for a categorical exclusion, but the district court didn't rule on the merits of any claim. This is not at issue on appeal as standing "in no way depends on the merits of the plaintiff's contention that particular conduct is illegal."[36]

Even though the Corps claimed the dock permit was "categorically excluded from NEPA documentation,"[37] the agency also prepared a "*Case Document and Environmental Assessment.*"[38]

---

[34] 33 C.F.R. § 325.2(e)(1); 33 C.F.R. Pt. 325, App. B (6)(a).

[35] AR00036; AR00048.

[36] *Id. citing Warth v. Seldin*, 422 U.S. 490, 500 (1975).

[37] 33 C.F.R. Pt. 325, App. B (6)(a); AR00036; AR00048.

[38] AR00034-00049.

The Corps' NEPA implementation regulations and the Council on Environmental Quality's NEPA regulations in effect when the Corps approved the dock required public notice and an opportunity to comment before completing an Environmental Assessment.[39] The Corps provided no public notice or opportunity to comment before completing the Environmental Assessment and issuing the permit.[40]

## B.    The standard for redressability is relaxed when an agency violates procedural rights

Article III of the Constitution limits federal courts to resolving "cases" and "controversies." This requires a person suing in federal court to allege (1) an actual or threatened injury, (2) a causal connection between the injury and defendant's wrongful conduct, and (3) that the injury can be redressed by the court's decision.[41]

---

[39] 40 C.F.R. §§ 1500.1(b); 1501.4(b); 1506.6(b); 1506.6(d) (2016); 33 C.F.R. § Pt. 325, App. B (7) (2016).

[40] Doc. No. 77 at 2, ¶ 8; Doc. No. 78 at 14, ¶ 8.

[41] *Speech First, Inc. v. Cartwright*, 32 F.4th 1110, 1119 (11th Cir. 2022) *citing Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992).

To show an agency's NEPA violation caused an "injury in fact" under Eleventh Circuit precedent, the injured party must show it's "reasonably probable that the challenged action" threatens their concrete interests – such as aesthetic or recreational interests.[42]

Center for a Sustainable Coast filed declarations from two members — Carolyn Rader and Plaintiff Karen Grainey — who described how the dock is causing them harm.[43] Grainey has been visiting Cumberland Island since the 1970s to enjoy its serenity and primitive character.[44] Grainey was surprised how large Lumar's dock appeared when she saw it. She felt the dock looked out of place and was noticeable well before the ferry arrived at the Dungeness dock. Grainey testified the dock was much more noticeable than an existing dock further in the distance. Grainey visits Cumberland Island to find refuge in its

---

[42] *Ouachita Watch League v. Jacobs*, 463 F.3d 1163, 1170-71 (11th Cir. 2006).

[43] Doc. No. 75, 76, and 82-1.

[44] Doc. No. 75 at 3, ¶ 7.

beauty and natural setting but seeing the Lumar dock
lessened these values for her. She would enjoy future visits
to Cumberland Island more if the dock is removed.[45]

Rader grew up on Sapelo Island and has been visiting
Cumberland Island regularly since the early 1980s. She used
to explore the island with her father and enjoy its viewshed
and protected shoreline and maritime forest.[46] Rader enjoys
the primarily undeveloped character of the island and
intends to continue visiting each year.[47] When she saw the
Lumar dock she was shocked and appalled by it. She felt it
was incongruous to see a new private dock, especially one so
large, right next to Sea Camp and within the National
Seashore. Seeing the dock along the estuary and maritime
forest was an intrusion into her viewshed and lessened her
enjoyment of seeing Cumberland Island.[48] Rader was
distressed to visit a place meant to be returning to a

---

[45] Doc. No. 82-1 at 1-2.

[46] Doc. No. 76 at 1, ¶ 3.

[47] Doc. No. 76 at 2, ¶ 8.

[48] Doc. No. 76 at 2, ¶ 9.

primitive, undeveloped state and to instead find a new structure within the seashore.[49]

Grainey and Rader were deprived of their right to receive notice of the proposed action before the Corps issued a permit affecting Cumberland Island's primitive character. They would have submitted public comments opposing the dock if they received notice before its approval.[50]

Once plaintiffs have "established injury in fact under NEPA, the causation and redressability requirements are generally more relaxed."[51]

The Supreme Court has explained that someone whose concrete interests may be harmed has standing to challenge an agency's failure to comply with NEPA even though they "cannot establish with any certainty" that it "will cause the license to be withheld or altered."[52] This is because when "a

---

[49] Doc. No. 76 at 2, ¶ 10.

[50] Doc. No. 75 at 8, ¶¶ 20-21; Doc. No. 76 at 4, ¶¶ 16 and 18.

[51] *Ouachita Watch League v. Jacobs*, 463 F.3d 1163, 1172 (11th Cir. 2006).

[52] *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 572 n. 7 (1992).

litigant is vested with a procedural right, that litigant has standing if there is some possibility that the requested relief will prompt the injury-causing party to reconsider the decision that allegedly harmed the litigant."[53]

### C. The Center's claim is not moot because the district court can set aside the permit authorizing the dock's existence

The district court found that "any objection to the dock's construction became moot when the dock was completed and the permit to build it expired."[54] The court observed, "there is no longer an active building permit to set aside."[55]

But even if "objection to the dock's construction became moot when the dock was completed," the Center's objection to the dock's *existence* is not moot.

---

[53] *Cahaba Riverkeeper v. U.S. Env't Prot. Agency*, 938 F.3d 1157, 1162 (11th Cir. 2019) *quoting Massachusetts v. EPA*, 549 U.S. 497, 518 (2007).

[54] Doc. No. 96 at 16.

[55] Doc. No. 96 at 17.

A party has a "heavy burden" to establish a case is moot.[56] When making this determination, courts should "presume" they "have jurisdiction until some party establishes" that they do not.[57]

Mootness bars a lawsuit "only when it is impossible for a court to grant any effectual relief whatever to the prevailing party."[58] A court's ability "to effectuate a partial remedy" is sufficient to prevent a case from being moot.[59]

The permit authorizes "the presence of the dock"[60] and "its intended use."[61] Setting aside the permit means the dock's existence would be unauthorized, and such a

---

[56] *Michigan v. Long*, 463 U.S. 1032, 1042 n.8 (1983) *quoting County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979).

[57] *Michigan v. Long*, 463 U.S. 1032, 1042 n.8 (1983).

[58] *Knox v. Serv. Emps. Int'l Union, Loc. 1000*, 567 U.S. 298, 307 (2012) quoting *Erie v. Pap's A.M.,* 529 U.S. 277, 287 (2000) (internal quotation marks omitted).

[59] *Church of Scientology of California v. United States*, 506 U.S. 9, 9 (1992).

[60] Doc. No. 94 at 3 n. 2; 33 C.F.R. § 325.6(b).

[61] AR00011.

determination would "incontrovertibly" leave the Center in a better position.[62]

Removing the dock will restore the tract's primitive character and help preserve the national seashore's primitive state. This is different than the type of project where an injury may be impossible to remedy.

For example, in *West v. Secretary of Department of Transportation*, the Ninth Circuit rejected a mootness claim in a case challenging a highway interchange that had been completed and open to traffic. The court distinguished a prior challenge to mining operations on public lands because "a completed mining operation cannot be moved" and the impacts of the mining operation cannot be reversed.[63]

The court found it unacceptable that completing construction could be enough to make the case nonjusticiable. Otherwise, federal agencies "could merely

---

[62] *Mingkid v. U.S. Atty. Gen.*, 468 F.3d 763, 768–69 (11th Cir. 2006).

[63] *West*, 206 F.3d at 926 n.5 *quoting Sierra Club v. Penfold*, 857 F.2d 1307, 1317 (9th Cir. 1988).

18

ignore the requirements of NEPA, build its structures before a case gets to court, and then hide behind the mootness doctrine."[64] If the agency failed to comply with NEPA, the court could remand for additional environmental review.[65]

Neither the completion of the dock nor the expiration of the deadline for its construction make redressability by the court an impossibility. This is especially true because the permit authorizes the dock's existence without any expiration date. Remanding to the Corps, with or without setting aside the permit, would redress harm to the Center.

### D.   The Corps' enforcement discretion doesn't affect whether the Center's harm is redressable

The district court concluded that setting aside the permit "does not actually solve anything" because the Corps' decision whether to have Lumar remove the dock is

---

[64] *West*, 206 F.3d at 925 *quoting Columbia Basin Land Prot. Ass'n v. Schlesinger*, 643 F.2d 585, 591 (9th Cir. 1981).

[65] *West v. Sec'y of Dep't of Transp.*, 206 F.3d 920, 925 (9th Cir. 2000).

19

committed to the agency's discretion.[66] According to the court, "authorized or not, the dock will still be there —and it will still inflict all the aesthetic injuries Sustainable Coast alleges."[67]

The APA bars review of action committed to agency discretion, including an agency's decision not to undertake enforcement actions.[68] The district court conflated this narrow exception to judicial review with its determination of whether the Center's harm can be redressed by a favorable decision.

The court assumed if it set aside the permit, Lumar would continue using the dock and the Corps would not order the dock's removal. With these assumptions in place, the court found applicable the "well-established 'tradition' that 'an agency's decision not to prosecute or enforce' is 'generally committed to an agency's absolute discretion.'"[69]

---

[66] Doc. No. 96 at 18.

[67] Doc. No. 96 at 18.

[68] *Massachusetts v. E.P.A.*, 549 U.S. 497 (2007); 5 U.S.C. § 701(a)(2).

[69] Doc. No. 96 at 18 *quoting Heckler v. Chaney*, 470 U.S. 821, 831-32 (1985).

But the district court's speculation about Lumar illegally using the dock and about the Corps refusing to enforce the changed legal status doesn't deprive the Center of standing to challenge the Corps' prior decision to issue the permit.

If a court concludes that an agency failed to follow a statute or regulation, the "injury is plainly redressable ... because the APA requires that a 'reviewing court shall … set aside agency action … found to be … arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law …."[70]

Even an agency's decision not to take an enforcement action can be subject to judicial review if based on an improper legal ground.[71] In *Federal Election Commission v. Akins*, the Supreme Court found standing when a group of voters with views opposed to the American Israel Public

---

[70] *Cahaba Riverkeeper v. U.S. Env't Prot. Agency*, 938 F.3d 1157, 1163 (11th Cir. 2019) *citing Ouachita Watch League v. Jacobs*, 463 F.3d 1163, 1173 (11th Cir. 2006) and 5 U.S.C. § 706(2)(A).

[71] *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 25 (1998).

Affairs Committee ("AIPAC") sued the *Federal Election Commission* ("FEC") for not classifying AIPAC as a "political committee."[72] Under the Federal Election Campaign Act, political committees were subject to reporting requirements, and plaintiffs alleged an informational injury from not being able to obtain the public disclosures.[73]

The FEC argued there was no standing because even if it agreed with plaintiffs on the law, the FEC "would still have decided in the exercise of its discretion not to require AIPAC to produce the information."[74] The Court rejected this argument because if a reviewing court finds that an agency misinterpreted the law, it "will set aside the agency's action and remand the case – even though the agency (like a new jury after a mistrial) might later, in the

---

[72] *Id.* at 14

[73] *Id.* at 21, 24

[74] *It* at 25  citing Petition for Certiorari.

exercise of its lawful discretion, reach the same result for a different reason."[75]

Even without setting aside the dock permit, harm caused by violating the Center's procedural rights can be redressed by remanding to the Corps for NEPA review.

### E.    Setting aside the permit would take away the non-party permit holder's legitimate discretion to use and maintain the dock

The district court found that setting aside the permit cannot redress the Center's injury because the court cannot "simply assume" the permit holder will honor its rationale, so "authorized or not, the dock will still be there."[76]

When a plaintiff's injury arises from an agency's regulation of someone else, causation and redressability ordinarily depend on the third party's response to the challenged agency action. If an essential element of standing "depends on the *unfettered* choices" made by independent, non-party actors who exercise "broad and

---

[75] *Fed. Election Comm'n v. Akins*, 524 U.S. at 25.

[76] Doc. No. 96 at 18-19.

*legitimate* discretion," the plaintiff must "adduce facts showing that those choices have been or will be made in such manner as to produce causation and permit redressability of injury."[77]

The Center's standing declarants described how the Corps' decision to approve the dock harmed their concrete interests and lessens their enjoyment of Cumberland Island's aesthetic and primitive values.[78] This harm is still redressable.

If the court sets aside the permit, any decision by Lumar to continue using the dock would not be "unfettered" or free from coercion. The Corps would have authority to enforce the dock's removal[79] or refer the case for criminal prosecution.[80] And Lumar would be bound by the consequence of a court order setting aside the permit even without an injunction ordering the dock removed.

---

[77] *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 562 (1992) *citing ASARCO Inc. v. Kadish,* 490 U.S. 605, 615 (1989) (opinion of KENNEDY, J.) (emphasis added).

[78] Doc. No. 75, 76, and 82-1.

[79] AR00006; Doc. No. 94 at 6; 33 C.F.R. §§ 326.3, 326.5.

[80] Doc. No. 94 at 6; 33 C.F.R. §§ 326.3, 326.5

The district court's speculation that Lumar would keep the dock and that the Corps would take no enforcement action – even if true – does not provide Lumar with "legitimate discretion" to maintain the dock.

The Supreme Court found standing to challenge action by the Fish and Wildlife Service even though the alleged harm depended upon action by non-party Bureau of Reclamation.[81] In *Bennett v. Spear*, the Fish and Wildlife Service issued a biological opinion that concluded a Bureau of Reclamation irrigation project was likely to jeopardize an endangered species. Ranch operators and irrigation districts alleged the biological opinion would cause reduced water supplies.

Fish and Wildlife Service responded that the cause of any harm "is an (as yet unidentified) decision by the Bureau regarding the volume of water allocated to petitioners, not the biological opinion itself."[82] The Court rejected this

---

[81] *Bennett v. Spear*, 520 U.S. 154 (1997).

[82] *Id.* at 168.

25

argument and explained while standing cannot rest on "the *independent* action of some third party not before the court, … that does not exclude injury produced by determinative or coercive effect upon the action of someone else."[83]

The Court observed that the biological opinion constituted a permit and that disregarding it would be at the Bureau's own peril as it could be subject to civil and criminal penalties.[84] Under such circumstances, setting aside the biological opinion would redress harm to the ranch operators and irrigation districts.[85] Similarly, setting aside Lumar's permit would redress the Center's harm.

---

[83] *Id.* at 169 (emphasis in original).

[84] *Id.* at 170.

[85] *Id.* at 171.

## II.    The district court applied the wrong legal standard for admitting extra-record material

### A.    The Corps failed to consider the tract's land use classification

The Corps' regulations for reviewing permit applications in a National Seashore require that the agency's action on such applications, "insofar as possible, be consistent with" federal land use classifications, controls, or policies.[86]

Federal land use classifications for each parcel on Cumberland Island are in the National Park Service's *Cumberland Island National Seashore Land Protection Plan*.[87] Lumar's tract is within the "Natural Environment Subzone."[88] The *Land Protection Plan* states the following about tracts within this classification:

- Residential or commercial development would detract from the existing primitive condition of these tracts by damaging resources and would be incompatible with the Section 6b enabling legislation and General Management Plan.

---

[86] 33 C.F.R. § 320.4(e).

[87] Doc. No. 54-1 at 11, 37.

[88] Doc. No. 54-1 at 12 (Tract 02-103); AR0248-0251.

- Development, such as roads, structures and land clearings, plus vehicular use would be in conflict with the intent of the enabling legislation, which is to maintain a pristine land appearance.[89]

The administrative record didn't include any reference to the land use classification for Lumar's tract. It was impossible to determine from the administrative record whether the parcel had no such classification — or whether the Corps overlooked it.

### B. The district court erred in finding that extra-record material is admissible "only" where there is a strong showing of bad faith or improper behavior by the agency

The Center moved to supplement the administrative record with the *Land Protection Plan* and a Federal Register Notice related to such plans.[90] In denying that motion, the district court applied the wrong legal standard.[91]

According to the court, *Alabama Tombigbee Rivers Coalition v. Kempthorne* held that material outside the

---

[89] Doc. No. 54-1 at 28, referring to 16 U.S.C. § 459i-5(b).

[90] Doc. No. 54 and 61.

[91] Doc. No. 65 at 8.

28

administrative record should be considered "only 'where there is initially a strong showing of bad faith or improper behavior' by the agency.'"[92]

But this standard is for an issue that didn't apply to the Center's request to supplement the administrative record. The language in *Kempthorne* was quoted from *Citizens to Preserve Overton Park v. Volpe* and is specific to the narrow question of when a court can compel agency decisionmakers to testify.[93]

The Supreme Court held that courts "may require the administrative officials who participated in the decision to give testimony explaining their action."[94] But the Court cautioned that "such inquiry into the mental processes of administrative decisionmakers is usually to be avoided."[95]

---

[92] Doc. No. 65 at 8 *citing Alabama Tombigbee Rivers Coalition v. Kempthorne*, 477 F.3d 1250, 1262 (11th Cir. 2007) and *Citizens to Pres. Overton Park v. Volpe*, 401 U.S. at 420 (1971).

[93] *Kempthorne*, 477 F.3d at 1262 *citing Overton Park*, 401 U.S. at 420.

[94] *Overton Park*, 401 U.S. at 420.

[95] *Id.*

The Court restricted the circumstances when a court can probe into the mental processes of decisionmakers by holding, when administrative findings were made at the same time as the decision, "there must be a strong showing of bad faith or improper behavior before such inquiry may be made."[96]

Requiring a "strong showing of bad faith or improper behavior" makes sense when the issue is whether a court can compel testimony into a decisionmaker's mental process. But there's no reason to apply this standard to the admission of extra-record material when the relevant question is whether the agency's decisionmaker considered the relevant factors.

In *Kempthorne*, the Coalition alleged that Fish & Wildlife Service engaged in improper conduct by purportedly interfering with the research of a scientist who worked for the agency.[97] The Coalition sought discovery, which the

---

[96] *Id.*

[97] *Kempthorne*, 477 F.3d at 1260.

district court denied, and the Eleventh Circuit affirmed.[98]

Under such circumstances, this Court properly applied

*Overton Park*.

But those circumstances don't apply here. Courts must

overturn agency action as arbitrary and capricious if the

agency failed "to examine the relevant data and articulate a

satisfactory explanation for its action including a 'rational

connection between the facts found and the choice made.'"[99]

An agency's decisionmaker must consider "all relevant

factors" before reaching a decision.[100]

The Center sought admission of two extra-record

documents to assist the district court in determining

whether the Corps considered all relevant factors. The

Center didn't seek discovery or any inquiry into the

decisionmaker's mental processes, so the bad faith or

---

[98] *Id*. at 1262.

[99] *Sierra Club v. Martin*, 168 F.3d at 5 *citing Motor Vehicles Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

[100] *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985).

improper behavior standard set forth in *Overton Park* and

*Kempthorne* is inapplicable.

### C.   Whether an agency considered all relevant factors can sometimes be determined only by reviewing extra-record material

Courts generally limit review of agency action to the

administrative record. But extra-record material may

sometimes be necessary to determine whether the agency

considered all relevant factors in making its decision. This

exception to the record review rule is especially important in

NEPA cases because an agency's failure to consider

environmental impacts may not be apparent on the face of

its decision.

*Sierra Club, Inc. v. Leavitt*[101] and *Preserve Endangered*

*Areas of Cobb's History, Inc. v. U.S. Army Corps of*

*Engineers*[102] are the only Eleventh Circuit cases to expressly

address the admission of extra-record material based on an

agency's alleged failure to consider relevant factors.

---

[101] 488 F.3d 904 (11th Cir. 2007).

[102] 87 F.3d 1242, 1246 n. 1 (11th Cir. 1996).

In *Leavitt,* the court held that EPA failed to evaluate all existing and readily available data.[103] The parties disputed whether this failure caused any exclusions from a list of impaired waterbodies.[104] Sierra Club attached documents to its district court and appellate court briefs,[105] and argued that the extra-record data could be reviewed by the courts because EPA failed to consider relevant factors.[106] EPA moved to have the extra-record documents struck from consideration on appeal.

The motion was denied as moot, but this Court indicated that extra-record material can be used to assist a district court's determination as to whether an agency considered all relevant factors. Specifically, this Court instructed that on remand, "Sierra Club is free to request that the district court supplement the administrative record

---

[103] *Leavitt,* 488 F.3d at 913.

[104] *Id.* at 914.

[105] *Id.* at 914 n. 16.

[106] Reply Brief, 2006 WL 3074750 at n. 2 *citing Suffolk County v. Sec'y of Interior,* 562 F.2d 1368, 1384 (2d Cir. 1977).

with these documents or consider them as extra-record

material necessary to determine whether the EPA

considered all relevant factors in making its decision."[107]

In ruling on the Center's motion to supplement the

administrative record with the *Cumberland Island National*

*Seashore Land Protection Plan*, the district court erred by

finding that bad faith and improper behavior are the "only"

circumstances to justify the admission of extra-record

material.[108]

### D. The Eleventh Circuit identified four circumstances when it may be proper to review extra-record material, but didn't find these to be the exclusive circumstances when courts can consider material outside the record

In *Preserve Endangered Areas of Cobb's History, Inc.*

*v. U.S. Army Corps of Engineers* ("PEACH"), this Court

stated that the "Ninth Circuit has specified that a court

may go beyond the administrative record only where" the

---

[107] *PEACH,* 87 F.3d at 1246 n. 1.

[108] Doc. No. 65 at 8.

court finds one of four identified circumstances.[109] These

included:

- an agency's failure to explain its action effectively
  frustrates judicial review

- it appears that the agency relied on materials not
  included in the record

- technical terms or complex subjects need to be
  explained, or

- there is a strong showing of agency bad faith or
  improper behavior[110]

This Court in *PEACH* concluded these exceptions

didn't apply,[111] and held that extra-record evidence didn't

need to be admitted because the administrative record

showed that the agency "weighed the relevant factors."[112] By

relying on an agency's weighing of relevant factors as the

reason it was unnecessary to admit extra-record material,

---

[109] *PEACH*, 87 F.3d at 1247 n. 1 *citing Animal Defense Council v. Hodel,* 840 F.2d 1432, 1436–37 (9th Cir.1988).

[110] Doc. No. 57 at 14 citing *Pres. Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Engineers*, 87 F.3d 1242, 1246 n. 1 (11th Cir. 1996) ("*PEACH*").

[111] *PEACH*, 87 F.3d at 1247 n. 1.

[112] *Id.* at 1246–47.

this Court seemingly left the door open to allowing extra-record material when it shows the agency overlooked relevant factors.

This conclusion is supported by the district court's decision in *PEACH*, which the Eleventh Circuit affirmed and called an "extremely well-reasoned order."[113] The Northern District of Georgia had stated it would "order the production of further evidence" if a thorough review of the administrative record disclosed "that certain factors were not considered."[114] In contrast, the district court here concluded that the "Eleventh Circuit does not accept a 'relevant factors' exception."[115]

Even though this Court stated in *PEACH* that the "Ninth Circuit has specified that a court may go beyond the

---

[113] *Id.* at 1245.

[114] *Pres. Endangered Areas of Cobb's History, Inc. (P.E.A.C.H.) v. U.S. Army Corps of Engineers*, 915 F. Supp. 378, 383 (N.D. Ga. 1995), *aff'd sub nom. Pres. Endangered Areas of Cobb's History, Inc. v. U.S. Army Corps of Engineers*, 87 F.3d 1242 (11th Cir. 1996).

[115] Doc. No. 65 at 11.

administrative record only where" one of four enumerated exceptions applies, the Ninth Circuit had already recognized an agency's failure to consider relevant factors as a reason to admit extra-record evidence.

One such case was *Asarco, Inc. v. U.S. Environmental Protection Agency*, where the Ninth Circuit explained that it will often be impossible for a court "to determine whether the agency took into consideration all relevant factors unless it looks outside the record to determine what matters the agency should have considered but did not."[116]

Similarly, when this Court observed in *Leavitt* that Sierra Club could request the district court to supplement the administrative record with "extra-record material necessary to determine whether the EPA considered all relevant factors,"[117] it cited a Ninth Circuit case with a parenthetical explaining that it may be necessary to look

---

[116] *Asarco, Inc. v. U.S. Envtl. Prot. Agency*, 616 F.2d 1153, 1160 (9th Cir. 1980).

[117] *PEACH,* 87 F.3d at 1246 n. 1.

outside the record "to determine whether the agency took into consideration all relevant factors" in reaching its decision.[118]

The Ninth Circuit cautioned, however, that courts "should consider evidence relevant to the substantive merits of the agency action only for background information … or for the limited purposes of ascertaining whether the agency considered all the relevant factors or fully explicated its course of conduct or grounds of decision."[119] If the court determines that the agency did not consider all relevant factors, it should remand the matter to the agency rather than undertaking its own inquiry into the merits.[120]

Other than *PEACH* and *Leavitt*, every Eleventh Circuit case that used the phrase "relevant factors" in reviewing agency action under the Administrative Procedure Act was

---

[118] *Sierra Club, Inc. v. Leavitt*, 488 F.3d 904, 914 n. 16 (11th Cir. 2007) citing *Inland Empire Pub. Lands Council*, 88 F.3d 754, 760 n. 5 (9th Cir. 1996).

[119] *Id.*

[120] *Id.*

referring to the standard of review rather than the admission of extra-record material.

For example, in *Lloyd Noland Hosp. & Clinic v. Heckler*, the court stated that in deciding whether the challenged action was arbitrary and capricious, it must determine whether the agency considered the relevant factors.[121] To make such a determination, a court must sometimes look outside the record. *PEACH* and *Leavitt* support admitting extra-record materials for this purpose,[122] and no Eleventh Circuit precedent precludes consideration of the *Land Protection Plan*.

Under its own regulations, "insofar as practicable," the Corps was required to determine the land use classification for the Lumar tract before deciding whether to issue the dock permit.[123] There's no rational basis for excluding that

---

[121] 762 F.2d 1561, 1565 (11th Cir. 1985) citing *Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Automobile Ins. Co.,* 463 U.S. 29, 43, 103 S. Ct. 2856, 2867, 77 L.Ed.2d 443 (1983).

[122] *PEACH*, 87 F.3d at 1246-47; *Leavitt,* 488 F.3d at 914 n. 16.

[123] 33 C.F.R. § 320.4(e).

information from the district court's review. This is especially true when the Center was deprived of its right to present this information to the Corps before the agency issued the permit.

## CONCLUSION

The district court erred by finding it cannot redress the Center's harm even though the permit authorizing the dock's existence and use is still in effect. The court failed to acknowledge the relaxed standards for causation and redressability when procedural rights were violated. The court also applied the wrong standard when reviewing the Center's request to admit extra-record material.

The Center asks this Court to reverse the motion denying the admission of the *Land Protection Plan* and to reverse the district court's summary judgment and dismissal.

Respectfully submitted June 22, 2022.

/s/ Jon L. Schwartz

Jon L. Schwartz
Ga. Bar. No. 631038

40

*Attorney for Appellants*
*Center for a Sustainable Coast and Karen Grainey*

**Law Office of Jon L. Schwartz**
1100 Peachtree St., N.E., Suite 250
Atlanta, GA 30309
404-667-3047
jon@jonschwartz.net

## CERTIFICATE OF COMPLIANCE

1.    This brief complies with the type-volume limitation of

Fed. R. App. P. 32(a)(7)(B)(i) because:

> this brief contains <u>6,233 words</u>, excluding those
> parts of the brief exempted by Fed. R. App. P.
> 32(f).

2.    This brief complies with the typeface requirements of

Fed. R. App. P. 32(a)(5) and the type style

requirements of Fed. R. App. P. 32(a)(6) because:

> this brief has been prepared in a proportionally
> spaced typeface using <u>Microsoft Office Word</u> in
> <u>Century Schoolbook</u>, <u>14-point</u>

<u>/s/ Jon L. Schwartz</u>

Jon L. Schwartz
Ga. Bar. No. 631038
*Attorney for Appellants*

**CERTIFICATE OF FILING AND SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished using the appellate CM/ECF system.

/s/ Jon L. Schwartz

Jon L. Schwartz
Ga. Bar. No. 631038
*Attorney for Appellants*

43